Good morning, our first cases today are numbers 23-1895 and 25-1292USA v. Clarence Gaffney. Mr. Austin? Good morning, Your Honors. Evan Austin with the Office of the Federal Public Defender on behalf of Mr. Gaffney. I'd like to reserve two minutes for rebuttal.  Thank you. I'm here today because the district court committed two errors below. One in denying Mr. Gaffney's motion to suppress and one in resentencing. I'd like to start with the suppression issue. Mr. Gaffney did everything this court's case law and the federal rules required to get a hearing on his motion to suppress. He stated a colorable violation of his Fourth Amendment rights, disputed facts material to the resolution of the motion. The court, I guess, kind of relied on the fact that the affidavit wasn't sworn. Is that correct? Your Honor, yes, Your Honor. The court relied on the fact that Mr. Gaffney did not submit an affidavit. And it's my position that that was not required. Let's assume we agree with you on that. Yes, Your Honor. What evidence was in the record then? I'm sorry? What evidence was in the record that would call for a hearing? The only evidence in the record was a single police report that the government submitted, which of course was also not a sworn document. And in Mr. Gaffney's reply brief, he specifically disputed a number of critical facts that the government was relying on to establish probable cause. He disputed the claim that he simply blurted out without prompting that there was weed on him and more in the vehicle. Disputed consent as well. He disputed consent, yes, Your Honor. But I didn't see anywhere where he disputed the smell of marijuana emanating from the vehicle. Where can you show us in the record that he disputed that? Absolutely, Your Honor. So I think there were a few points where he did dispute the smell of marijuana emanating from the vehicle. I would direct the court to Appendix 47. That's Mr. Gaffney's reply brief. Defense counsel said that the officer's claim about smelling marijuana coming from the vehicle was, quote, allied by the many other justifications they were offering for the search. Counsel then repeated that. That's counsel. That's not Gaffney. Correct, Your Honor. So the argument of counsel and counsel's main argument was if they really had probable cause because of the smell of marijuana, they wouldn't have been bootstrapping with all these other arguments. That was counsel's argument, was it not? Your Honor, so I think that counsel made several alternative arguments. And I would concede that counsel was not always artful in how he articulated each of his arguments. But one of his arguments was that the officer's entire account was not credible. He said multiple times that it was not credible and that it did not ring true. Is that enough for hearing? Is it enough for hearing for a lawyer to say, don't believe what the officer says in the police report? No, Your Honor. So I think what this court has said in cases like United States v. Hines and United States v. Voight is that there has to be, the defense's motion has to be sufficiently specific, detailed, and non-conjectural, right? But we have met that standard here, Your Honor. So it's not just that Mr. Gaffney or that counsel issued a blanket denial and said, we just don't agree with the police's version of events. He was pointing to specific facts in the record that the government was relying on, such as the purported statements from Mr. Gaffney, such as the alleged consent, and such as the smell of marijuana. And, Your Honor, I want to make a few other points on the smell of marijuana because I know the government is relying heavily on that. The first point is that, as I believe the government concedes, the district court was not relying on that fact in denying the motion. So the government is asking this court to affirm on an alternative basis. And, of course, this court has the ability to do that, but it has to be clearly supported by the record. And I would argue, Your Honor, that the alleged smell of marijuana is not clearly supported by the record. In fact, there's a number of facts in the record that make that allegation very questionable. So, for example, as we pointed out in our reply brief, the officers are claiming that they smelled marijuana coming from the vehicle, but they thoroughly searched the vehicle and they did not find any marijuana in the vehicle. So my question would be- That doesn't matter. He could have thrown a joint out the window or, you know. I think, Your Honor, I think- Those two things aren't inconsistent. Okay. Well, whether or not- I would submit that it casts doubt on the claim that there was a strong odor of marijuana. And the second fact, Your Honor, is that the officers claimed that they smelled marijuana coming from the passenger compartment of the vehicle, but then the first thing they searched was the hood and the trunk of the vehicle. So I think those facts- They had three things that they claimed. They could smell marijuana from the car. The Gaffney stated that there was weed in the car and that he orally consented to a search. So it would seem, okay, if you're a judge, you've got this information coming to you. Now you've got this person saying, that's not true. The judge has to make a finding, and isn't there enough here to say in this disputed case that, okay, there's a finding, and it's not- it's hard for us to say it's clear error. Well, so, Your Honor, I think, you know, Your Honor raised a good point, which is that there is a credibility determination here. There's a credibility issue. This is effectively a he said, she said, right? The officers are saying- He said, they said. Yes, he said, they said. At least two officers testified about the smell. Corroborated. So I think the critical point, Your Honors, is that there can't be clear error deference because the court did not hold an evidentiary hearing. So, right, the question here, I'm not asking this court to reverse the denial of suppression and grant Mr. Gaffney's motion. We are simply asking for an evidentiary hearing on the motion. And the district court, seeing that there were these conflicting- there was a dispute, clear dispute about several critical facts, including the smell of marijuana, the facts, Judge Amber, that you've recited, there should have been an evidentiary hearing because this court is now left to rely on a single police report in trying to determine what happened here. And there were really no factual findings by the court, or if the court made factual findings, it basically said that because there was no affidavit submitted by the defense, I am simply going to accept the government's version based on the single police report as true. That, I would submit, Your Honor, that that is not really a robust factual finding because there was not sworn testimony. There was not the opportunity for cross-examination. All we're asking for is a fair opportunity to test the officer's account, which I would suggest is a dubious account based on all these overlapping claims. Let me ask a structural question. You've got the police officers testifying, or through their police report. Not testifying per se, but they are making statements of fact in a police report, right? Yes. And you're countering with arguments from counsel. Assume that we agree with you that the district court should not have set this up with a presumption that some affidavit is required for an evidentiary. Assume that an affidavit is not always required in these circumstances. Wouldn't it make sense for the district court, though, to require some statement from your client rather than representations of counsel? They're not evidence. They're not subject to penalties of perjury. I mean, police officers who lie in police reports are subject to perjury or discipline. So there's nothing coming from your client. Isn't that something that we should focus on and require, or at least allow district judges to require a statement from the client, him or herself, rather than just representations of counsel? I would no, Your Honor. And the reason I say no is primarily because of the burden of proof, right? So it is very clear from this court's case law that in a case that involves a warrantless search, the burden shifts to the government to show that the warrantless search was lawful, right? Warrantless searches are presumptively unlawful. So requiring the defense to come forward, whether it's with an affidavit or even with some statement from the defendant, I think that would shift the burden of proof back onto the defense in a way that is impermissible and inconsistent with what this court has said, which is that the burden of proof rests with the government. This court, of course, would never say that a defendant should have the burden of proof rests with the government, but the entitlement to an evidentiary hearing, there's a burden of production at least on the defendant's part, is there not? Well, Your Honor, yes. From the district judge, I'm saying, you want an evidentiary hearing? Tell me why I should have one. And the response is, well, I have some lawyerly arguments as to why you should have a hearing. If I'm the district judge, I'm saying, well, lawyerly arguments about a hearing don't tell me anything about what the fact-finding is going to happen, what's going to occur. That's the whole reason for the hearing is to make some fact-finding, right? Yes. So the arguments of counsel aren't helping me find facts. Well, so, Your Honor, I would say a couple things. First, I think that it does raise Fifth Amendment concerns. If you're saying that defendants have to, are compelled to give some kind of statement, break their Fifth Amendment silence and give a statement just to get to an evidentiary hearing, I do think that that would potentially raise constitutional concerns. I know there is a case, Simmons v. United States, that creates some sorts of immunity in the suppression context. But I still think that it would be problematic to say that a defendant has to speak in order to get to an evidentiary hearing to ultimately try to vindicate their Fourth Amendment rights. So that's one point I would make, Your Honor. But I would just stress that I think that to the extent that Your Honor is expressing concern about floodgates or concern that, you know, it would be— It's more, you know, counsel can make all kinds of arguments and there's no real skin in the game because the counsel is not making factual representations. The lawyer can't get hit with perjury or get in trouble. They're making legal arguments. And there's not even really a problem with candor to the court because a legal argument isn't the statement of fact. So I would—and I'm glad that Your Honor brought up candor to the court because I would push back on the idea that there's no consequences for this. So I do think these were effectively factual representations. These were effectively offers of proof. Counsel was saying that Mr. Gaffney denies making those statements. He denies giving consent. And we are— All right, good. But what counsel didn't say was Gaffney denies that there was marijuana emanating from the car. Instead, counsel says, Judge, you shouldn't believe that. And the reason you shouldn't believe it is because they're making all sorts of other arguments. And if it was so clear that there was marijuana emanating from the car, strategically, the government would not have made those other arguments. Isn't that what counsel argued? Well, so I think—I think counsel's argument was it was a bit unclear, but I do think at various times he was directly disputing. I agree that it was— What did he say where he directly disputed? I mean, what you would hope to have, I think, is something in the record that said Mr. Gaffney denies that there was ever marijuana emanating from the car at the time of the stop. Yeah. That would be a home run for you. That would be—that would be ideal. And you don't have that. So what do you have that's closest to that? Yeah, so I think two statements. Appendix 47, he said that the claim about the smell of marijuana was belied by the other statements. I think that that clearly implies that it was not true. And then on Appendix 78, Your Honor, he listed all of the various justifications that the officers gave, including the smell of marijuana, and said that they did not ring true. So I don't think that this court should demand a magic words test, and I don't think that this court's case law requires magic words. I think this court simply requires a colorable constitutional claim, which I hope we can all agree that Mr. Gaffney raised based on the warrantless search, and simply a specific dispute of material fact, which I believe that was more than satisfied here. Your Honor, I would just like to make a few other quick points on this issue. One point is notice. So if the court is going to articulate some kind of a new standard or clarify the standard here, I would strongly urge the court to give Mr. Gaffney an opportunity to meet that standard, because he was not on notice in this case that he was required to come forward with a statement or submit an affidavit. So he never had an opportunity to meet that requirement, and we would be happy to meet whatever requirement the court articulates to just give Mr. Gaffney that opportunity. So I would strongly urge the court to give Mr. Gaffney that opportunity to satisfy it and get to an evidentiary hearing. I think that that would be only fair in this case, as this court has done in other cases where it's announced a new procedural requirement. So I think that's a strong point on notice. And, Your Honor, I would also just urge that suppression hearings, they are a critical part of our legal system. They play a lot of important roles. They ensure that officers are following the Constitution and following the law when they're stopping and searching people. They ensure that district courts are deciding motions to suppress based on a robust factual record, as opposed to a single police report, as in this case. And then they give this court a more robust factual record with which to review district court's decisions. So I think to the extent that the government is arguing that we should be limiting suppression hearings, I would strongly push back and say that they're a very important, critical part of the system. And if anything, Your Honor, I would say that the evidence suggests that we're having very few trials and very few evidentiary hearings, at least in the federal court system, and that we should be having more suppression hearings, not less. I see that I'm out of time. I know I haven't discussed the second issue. You can address that on rebuttal. Yes, Your Honor. No problem. Thank you, Mr. Austin. Ms. DiTillo. Good morning, Your Honors. Jane DiTillo on behalf of the United States. I'd like to start with addressing Mr. Gaffney's claims on reply that he disputed the marijuana smell. He did not. So there are two references to it in a rhetorical fashion. That's page 47 of the record in his motion, which he mentioned in his opening argument, and also page 63 of the oral argument. And in both of those cases, he phrases it in sort of a rhetorical question. He says, why would they have made up consent if they already had? Why would they need consent if they already had the marijuana? That's not an outright denial. That's not a fact. As you said, that's a legal argument. And the other times he's mentioned it in the oral argument, and I think this is very important, are in pages 54 through 55, and again at 65. And at those two points, he only mentions it. And in fact, he says there was a plain smell search. He mentions it to support his argument that the search of the car exceeded the reasonable bounds of what was allowed because it went beyond the panels. So the thrust of his argument was, number one, that the scope of the search, not that the search itself was not supported by the plain smell, it was that they could not dismantle the car. That was not supported by the Supreme Court's decision in Ross. So there was no denial of that. And my friend Mr. Austin mentioned page 78 where counsel says, these justifications don't ring true. But he left out what counsel said next. He said, they don't ring true to me. He never gave a factual dispute based on what he learned, the facts that he learned from his client. And that's what is needed to dispute, to create a material dispute of fact in order to get an evidence. Maybe he just misspoke when he used the words to me. So suppose he didn't say to me. Even that would not be enough because he's putting every, he's kind of giving a kitchen sink description of all of the reasons that the police gave in saying none of these ring true. This is kind of a blanket. The police are not credible. And that is not enough under Hines. You have to have specific and concrete disputes of fact. And he didn't do that here with the marijuana. If Gaffney had said there was no smell of marijuana coming from the car, now we've got a dispute of fact and a hearing is required, right? If Gaffney had said, yeah. And I think it would depend. And he doesn't have to file an affidavit. I think that would depend. So it depends on how he says it. At trial, he gave pretty specific, he articulated pretty specific and concrete facts. He said, I got out of my car. I was 13 feet away. The door was locked. The police took my keys and opened the door. It couldn't have smelled like marijuana. It was February. I hadn't smoked anything in the car. If he had put all of those facts, then maybe we wouldn't need an affidavit. Maybe we wouldn't be here. If he had just said the car didn't smell like marijuana. Legally, are you arguing that a judge can deny an evidentiary hearing solely because there is not a sworn affidavit? We are not making that argument here. And this court does not need to find that to affirm Judge Wiggins. The district court sort of suggested that, or at least implied it, right? To clean that up? I think that she was making a decision based on the facts of this case. And in this case, I think it was not arbitrary and not irrational. The question was, did she indicate or imply that she was making that decision not to have an evidentiary hearing because there was not a sworn affidavit? Well, that is why she made the decision in this case. But I don't think that she indicated that there is a blanket rule that there always must be an affidavit in every single case. But if she's making it in this case, it's not required. Isn't then what you're arguing is really just harmless error? She shouldn't have said that. That an affidavit is required? That a sworn affidavit is required. I think that for her, in this case, she required a sworn affidavit. So that was true of her in this case. Legally, is she correct in saying that? In other words, I'm not going to give you an evidentiary hearing unless you have a sworn affidavit, because I think that's what's required of me. Isn't that incorrect? There is no rule or law requiring a sworn affidavit to, or case law requiring a sworn affidavit. But if there is no law, then? But I believe that she was interpreting the law which requires the defendant to produce some evidence to... That's different. Right. Couldn't he have done it in ways other than an affidavit? He could have. He could have submitted dashboard cam video. He could have... It might have appeared in the police report. The police report might have said something like, we pulled him over because of plain smell and we got in an argument because the subject got irate or upset claiming that there was no smell. That might be another. Right. Sometimes there are multiple police reports, for example, and there is an inconsistency in those police reports. There is no blanket affidavit requirement and there certainly would not have been an abusive discretion to grant an evidentiary hearing in this case. There's no legal requirement for an evidentiary hearing, but there was not an abusive discretion to require one here where she had, on the one hand... I will say this is one of the most well done police reports that I have read. It's very well written. It's very detailed. It's thorough. It's chronological. It's internally corroborative and logical. It's also signed by two detectives who were on the scene and who had personal knowledge of what happened. It's not just the detective who was there and his supervisor back at the station. His supervisor was in the car and on the scene with him. These are the signatures of two detectives on one police report who had personal knowledge of what happened and that is against a bare denial. A bare denial without facts. Without the facts that he eventually provided at trial. The crux of your argument, it seems, is that he could have said earlier what he said at trial. Yes. He could have said that earlier. As I understand Mr. Austin's argument, he didn't have to. And I guess your response is, well, you're silent at your peril when it comes to earning an evidentiary hearing? My response is that he didn't meet his burden of production at the motion to suppress stage to get an evidentiary hearing by not giving more facts, by not giving an affidavit, by not giving more. He didn't give evidence to... What's your response that Mr. Austin argued that representations from counsel should be enough? Why does the client have to speak? Why can't counsel establish enough of a dispute of fact to earn a hearing? As you said, a counsel's arguments are not factual assertions. Even if counsel is making factual assertions, there is not the reliability that you have when an individual is making a factual assertion with personal knowledge. Especially not when it is someone who is making an assertion under penalty of perjury or with the risk that they would be subject to an obstruction of justice enhancement later on. Allowing counsel's assertions to open up an evidentiary hearing in every case would allow defendants to tell their attorneys at the start of a case anything they want. An attorney could put that into a brief. I'm not impugning the defense attorneys. I'm not saying they're violating... So even if here the defense lawyer represented directly to the court, Judge, we need an evidentiary hearing because my client insisted, he told me absolutely unequivocally that there was no smell of marijuana in the car, that that was fabricated by the police. That's not enough for an evidentiary hearing? I know that's not this case. Your argument is that part of the reason the judge didn't err in denying an evidentiary hearing was the lawyer made clever legal arguments, not that sort of direct factual. That's your primary argument. I want to test the limits on the doctrine. My first answer to that would be that that is a different case. I would say if I were the AUSA in that case, I would probably agree to an evidentiary hearing to be safe and to avoid the issue on appeal. But if I were on appeal and arguing the case, I think it would not be an abusive discretion to require an affidavit in that case. What about the constitutional concerns that were raised by Mr. Austin in that regard? Simmons is a well-established law. The immunity that you have when you are testifying at a suppression hearing is well-established. It cannot be used against you at trial except on impeachment. But again, there's no right to perjure yourself at trial to begin with. Second, when we're talking about consent and giving an affidavit saying I did not consent to this, that's not self-incrimination. I don't see how that impinges on the Fifth Amendment. I don't see how that is a constitutional issue. I also want to say that in your hypothetical about the counsel giving facts to the court, we also would be weighing that against what the government's proffer was. So if it was this police report signed by these two detectives who were there on the scene, I think we would have a much stronger case that, yes, the court can require an affidavit in those circumstances. I'd also like to address the issue that this was not a requirement that was given ahead of time. And I understand defense counsel's concern that he may not have known that there was an affidavit requirement. Well, my answer to that is that first of all, I think you can get that argument in our briefs. He did not address it at any point. You have to address it if there is no affidavit requirement. He could have addressed the issue. But more importantly, he could have at any point at the hearing, right after the hearing, he could have said, Your Honor, can we supplement our motion to suppress with an affidavit? And he never did that. The judge had absolute discretion to reopen the motion to consider an affidavit. I don't know why he didn't do that. Maybe they didn't want to submit an affidavit. Maybe it would have been an abusive discretion for her to say, No, I'm not considering it anymore. You didn't submit it in the first place. I don't know what the answer to that would be, but that would be a different question. We don't know the answer because he never tried. If that is the only problem, that he didn't have notice of an affidavit requirement, all he needed to do was to try to write a one-page affidavit saying, I did not consent, sign it, and try to reopen the motion. We're going to have to rebuttal the counsel on the drug-soaked evidence of drugs in the papers. Could you address that issue? Sure. So I think all you need to know to rule on that issue is on page 851 of the record when Judge Wigginton says, I just want to be clear. This sentence is not imposed because... At the very end. Yes. If you look at the first sentence, first sentencing in 2023, I believe, you look at Appendix 623, the Court says, I think one of the most concerning things is what's been alluded to regarding the paperwork you received, and it was drug-soaked. And you took it back to the jail. And you got it while you were in the courthouse. And just for me, that's a complete and total lack of respect for what we're doing here, what this system's about. And then later on in the second sentence, she says, I didn't really consider it, but it's a factor. So what is it? And then at the end, when the U.S. Attorney jumps up and says, well, geez, or counsel gets up, I really wasn't considering that. But you look at what before, she had to have been considering it. It was a... Even in the second sentence, he goes, well, it's a factor. I'm not really considering it, but it's a factor. I don't know what that means. Right. So I'll admit that phrase gave me pause when I first read it. But I think that when you... First of all, I think that the last statement controls, because it shows... And they're a little bit different, because it says she did not rely on it. She referenced it, but she did not bridge the gap between reference and reliance. It did not affect the sentence. So a disclaimer is an automatic wiping of the board? I don't believe it's a disclaimer. I think it's an explanation. After she had fully considered the 3553A factors, gone through them, and said this did not affect the sentence that I gave. I want to be clear that if she used causal language, she said, I did not impose sentence because of that event. I mentioned it because it happened. I didn't impose because of that sentence. It didn't affect the sentence. So I think that is what... Does that mean everything she said before was referencing historical fact, but not causality? I think that's true. And I think... Does the statement of reasons form do any work here? It does. It was interesting to me that she changed the statement of reasons form to not include that information. Yes, you're right. So she had listed it on the first statement of reasons. The second statement of reasons does not include it. It includes his extremely troubling criminal history. It includes the facts of the trial, his arrest, his testimony, which... But she still varied down. But she kept saying, what's different than from the first sentencing? There's nothing different other than you've had a good record. Yeah. I think that reading that statement, I think we can say what she meant by what's different is what is moving the needle, what is affecting my sentencing decision. Because there were obviously different things. She says during the second sentencing hearing, this time you've showed remorse. You didn't show remorse at the first sentencing hearing. I appreciate that. It shows maturity. Obviously he had also I think engaged in some BOP programming that he discussed and she reacted to. So there were some differences between the first two hearings. But I think when she said what's different, I think she was going to... What is really going to affect... What is different that is really going to affect my sentence here? Maybe we're arguing about nothing particularly important because she has a right to consider the drug-soaked evidence. Yes, that's right. And she clearly did in the first sentencing. And in the second one, she's got this, I didn't, but I did. It's a factor. And then at the end, it's a disclaimer. My only concern is, can a disclaimer wipe away all that's been said before in that sentencing hearing? The second sentencing hearing. So no, I think not all the... I don't consider this a disclaimer. So first of all, I want to just pose the possibility. I see my time is up, but I'll continue to answer your question. I just want to pose the possibility that these two sentences are not necessarily contradictory. So rely on and consider could be two different things. We often say when a defendant is challenging the reasonableness of his sentence, he says, well, the court didn't consider my argument on this. And we will say, well, the court considered it, but it didn't accept it. It wasn't convinced by this argument. Maybe the court said, well, I considered it, but I didn't give it any weight. I don't think that that... I don't know that that's what she was saying here when she said it's a factor for consideration. She didn't even say, I am considering it. But that's one way to read it as I think read those two words as harmonious. I think it's really important that she used because of. I did not impose sentence because of it. It did not have any weight, even if it was a factor. It did not tip the scales in any way. So I think that's an important... And I think when you look at the factor, I mean, you mentioned before, couldn't the attorney have misspoke when he said it doesn't ring true to me. I think it's possible that she could have misspoke when she said it is a factor for the court's consideration because right before that she says, I'm not punishing you for that. And then she says it doesn't change the fact and then she goes on to list the 35-53 factors that she did rely on that were really meaningful to her in crafting the sentence. And those were the facts of the trial, the arrest, Mr. Gaffney's testimony, which was problematic to say the least, and what she described on the second statement of reason as extremely troubling criminal history. So I think that viewed as a whole in context, the last statement controls. It's unequivocal. It is given after. It's direct. It's given after. She has gone through the entire analysis and it explains, I did not rely on it. I can also address the fact that... The Third Circuit model instruction said that the government must prove beyond a reasonable doubt that the evidence introduced at trial is the same evidence recovered during the investigation. Where has this court treated that proposition as a requirement that's distinct from the authentication standard under Federal Rule of Evidence 901? So, Your Honor, I have gone over my time, but I think that may be an issue for the next case. And I apologize that I'm still standing here, but I do, if Your Honors do have time, I have, I would like to address the fact that this, there is, you know, whether or not the judge did consider this, she could have considered it. There was more than enough evidence and I am happy to sit down if... You have a harmless error argument too. Yes. No, we got it. We'll rely on the briefs for that. Thank you very much. Let's hear Mr. Austin's rebuttal. Thank you, Your Honors. Just a few points. First, starting first with the sentencing issue that Ms. Dottillo was just discussing. I think there's two questions, right? One is whether there was an error at the resentencing and whether any error was harmless. First, the government has conceded that Judge Wiginton actually did not make any factual findings to resolve the dispute about whether or not Mr. Gaffney brought these papers into the jail. There was an objection to the PSR. The government had a burden to prove it. The government did not bring forward any evidence and the government concedes that Judge Wiginton never made any factual findings. So that is an error, Your Honor, under a federal... The incident reports were pretty reliable, right? I would not say so, Your Honor. I mean, it's a hearsay document. There was no contradiction in them, was there? There was, well, okay, so Your Honor, one issue was that... Obviously a big issue because it was front page of the New York Times this week. Yes, bad timing for that article. I did read the article. I think that, Your Honor, there were issues that the incident report did not address. Even if the incident report was sufficient to prove that Mr. Gaffney was in possession of the drug-soaked papers, they proved nothing as to his knowledge or intent. They did not prove that he knew that those papers were in his possession. They didn't prove that he intended to bring them to the jail. So I do think that the district court had a duty to make a factual finding on that issue, and it did not. Your Honor, I would like to just briefly turn back to the affidavit issue to close out my time. I think the court indicated, or Judge Ambrose, you indicated, if Judge Wiginton made an error in requiring an affidavit, shouldn't we just send the case back for further analysis? And I would say yes. It is very clear from the record that she was basing her denial of an evidentiary hearing on this notion that there needed to be an affidavit, and there was not. Because that is not a legal requirement, the court should clarify that and send it back, if nothing else, for further analysis. I took what Ms. Dottillo said as it's generally not required. But you've got to put something in and there may be a time where a judge says, I think you should have put in an affidavit here because there's nothing else there. And you didn't do it, and therefore you've got a problem because you've got no record that supports your case. It's slicing it in a different way, but it's nuanced. What I would say to that, Judge Ambrose, is that even if there's some requirement that the defense has a burden of production and has to come forward with some evidence, there's no requirement that the defense cannot rely on the government's own evidence to point out inconsistencies and contradictions. And so here, we are relying on the government's own police report, and I know that Ms. Dottillo... It's not a true inconsistency, though, because you've got two officers and they're singing from the same sheet of music. It's not a case where one officer said plain smell and the other officer said something different, or no plain smell. They're in sync. Well, Your Honor, there was one author in the report, so I don't think it's fair to say that there was any kind of internal corroboration because one officer authored the report. I understand that multiple officers signed the report. I would also just say, Your Honors, this is a police report. This is a document that Congress has acknowledged is so inherently unreliable that it is not admissible at trial because it is an inherently adversarial document. So I would push back on a notion that a single police report which is not sworn and it's not corroborated by any other evidence, this is not a case involving body camera video or even multiple police reports authored by multiple officers. It's a single document, and I would strongly push back on the notion that that should be given some kind of presumption of reliability, or that is good enough in itself to carry the government's burden of proof and resolve these various questions. The final point I'd make, Your Honors, I don't want to overstate my time, on the smell of marijuana, I would again just stress that the court did not rely on that as a basis for denying the motion to suppress. So this court has the discretion of whether or not it's going to rely on that issue as an alternative basis on which to affirm. I would strongly urge the court that it should not use its discretion to affirm on that basis because there are a number of questions about the credibility of the smell of marijuana that are best resolved at an evidentiary hearing. And in fact, as the government has acknowledged, the district court made a finding that the smell of marijuana did not arise until after the search had already begun. So this court would not only be affirming on a basis that the district court did not rely on, but it would actually be overriding the court's own factual findings. Thank you, Your Honor. Thank you to both counsel. The court will take the matter under advisement. Thank you.